IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GMG INSURANCE AGENCY, | § | |
| | § | C.A. No. 213, 2023 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Case No. N21C-07-002 |
| MARGOLIS EDELSTEIN, | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: January 17, 2024
Decided: April 19, 2024

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

Upon appeal from the Superior Court of the State of Delaware. **REVERSED AND REMANDED.**

Michael R. Ippoliti, Ippoliti Law Group, Wilmington, Delaware, *for Appellant GMG Insurance Agency.*

Sally J. Daugherty, Salmon, Ricchezza, Singer & Turchi, LLP, Wilmington, Delaware, *for Appellee Margolis Edelstein.*

**GRIFFITHS**, Justice:

This appeal arises from a claim of professional negligence relating to legal services that appellee Margolis Edelstein provided to appellant GMG Insurance Agency. Margolis represented GMG and Howard Wilson, one of GMG's employees, in a non-compete dispute in the Court of Chancery. After GMG failed to prevail fully on a motion for summary judgment in that underlying dispute and settlement talks broke down, GMG fired Margolis. On the eve of trial, with GMG represented by new counsel and Wilson represented by separate counsel, Wilson filed an affidavit recanting his prior testimony and providing new testimony that was drastically inconsistent with his prior testimony and unfavorable to GMG. GMG settled the litigation shortly thereafter.

GMG then sued Margolis in the Superior Court for legal malpractice. GMG asserted that but for Margolis's negligent representation in the Court of Chancery, GMG would not have been exposed to the consequences of Wilson's pre-trial eleventh-hour change in testimony. The Superior Court granted summary judgment in favor of Margolis on GMG's professional negligence claim, finding that Wilson's affidavit was a superseding cause that broke the causal chain linking Margolis's alleged negligence and GMG's claimed damages. We hold that this decision was in error because there are disputes of material fact as to whether Margolis deviated from the requisite standard of care. The court also erred by failing to address GMG's contention that, but for Margolis's alleged negligence, GMG would have prevailed

2

on all claims in the Court of Chancery litigation—a circumstance that would have effectively negated Margolis's superseding cause argument. Accordingly, we reverse the judgment of the Superior Court and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *Howard Wilson's Employment Background and the USI Litigation*

Over the past decade, Howard Wilson has worked at a few insurance agencies. He was employed by USI Insurance Services in 2014. In July 2014, Wilson resigned from USI and joined Lyons Insurance Agency with the understanding that he would bring his customer relationships from USI to Lyons. About three-quarters of his clients followed him from USI to Lyons. Wilson, however, was bound by a non-compete agreement with USI, of which Lyons was aware.

USI sued Wilson and Lyons in Pennsylvania state court to enforce Wilson's non-compete obligations. On August 8, 2014, the Pennsylvania court issued an eighteen-month injunction against Lyons and Wilson, prohibiting them from servicing any clients that moved with Wilson from USI to Lyons. In July 2016, one month before the injunction was to be lifted, some of Wilson's former clients changed brokers to GMG. On July 18, 2016, Lyons and USI settled, ending the

---

[1] The following undisputed facts are drawn from the record below, as well as from the record in the underlying litigation in the Court of Chancery. *See* C.A. No. 2017-0092-SG [hereinafter "Ch. Dkt. at __."].

litigation. The court subsequently lifted the injunction and USI's non-compete rights ended.

After the injunction was lifted, Lyons instructed Wilson to solicit back his former clients. Wilson contacted his largest former client—OTG Management Inc.—to gauge its interest in switching brokers. At the time, OTG was serviced by GMG. OTG was not interested in moving its business. At that point, Wilson was struggling to bring in business to Lyons and he felt that his career was in balance. After taking a vacation in late July 2016, Wilson resigned from Lyons on August 12, 2016. Upon resigning from Lyons, he joined GMG, with whom he had been in talks while employed at Lyons. Wilson, however, was bound by a non-compete agreement with Lyons that was still in effect at the time of his hiring at GMG.

*B. The Court of Chancery Litigation*

On February 7, 2017, Lyons sued Wilson and GMG in the Court of Chancery seeking injunctive relief and money damages (the "Chancery Litigation").[2] Lyons claimed that Wilson's employment with GMG breached his non-compete agreement with Lyons and that GMG aided and abetted that breach and tortiously interfered

---

[2] Lyons brought the following causes of action: (i) breach of contract (against Wilson); (ii) breach of the duty of good faith and fair dealing (against Wilson); (iii) quantum meruit (against Wilson); (iv) aiding and abetting (against GMG); (v) unjust enrichment (against Wilson and GMG); (vi) civil conspiracy (against Wilson and GMG); and (vii) tortious interference with contract and prospective economic relations (against GMG). *See* Ch. Dkt. 1 at ¶¶ 53–94 (Chancery Compl.).

4

with the agreement between Lyons and Wilson. GMG retained Margolis to represent itself and Wilson in the matter.

On February 28, 2017, the Court of Chancery granted Lyons's motion to expedite, and the parties pursued discovery in advance of a hearing on Lyons's motion for a preliminary injunction. During the month of April 2017, Margolis attorneys corresponded with each other about being "wholly inexperienced" and "ill-equipped" to handle discovery in the Court of Chancery.[3] On July 12, 2017, the court refused to issue a preliminary injunction, and both sides took additional discovery.

On February 23, 2018, Lyons filed a renewed motion for summary judgment on three counts, and GMG and Wilson moved for summary judgment on all counts. On September 28, 2018, the Court of Chancery granted summary judgment in favor of GMG on all counts except for Lyons's tortious interference and breach of contract claims. As to that claim, the Court of Chancery held that "the factual record [was] not sufficiently developed as to whether GMG's actions satisf[ied] the remainder of the tortious interference requirements."[4]

---

[3] App. to Answering Br. at B50, B53.

[4] *Lyons Ins. Agency, Inc. v. Wilson*, 2018 WL 4677606, at *8 (Del. Ch. Sept. 28, 2018). [hereinafter "*Chancery Opinion*"]. To prevail on a claim of tortious interference, a party must show that: "(1) there was a contract, (2) about which the particular defendant knew, (3) an intentional act that was a significant factor in causing the breach of contract, (4) the act was without justification, and (5) it caused injury." *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (citation omitted). The Court of Chancery noted that while it found that "[Wilson's non-compete agreement with Lyons was] a valid contract, and Wilson

After the Court of Chancery's ruling, the parties engaged in mediation from October 2018 through April 2019. In March 2019, Margolis advised GMG to settle the litigation, but also expressed its willingness to take additional discovery and proceed to trial. In April 2019, GMG terminated Margolis after mediation was unsuccessful. It hired Smith, Katzenstein & Jenkins LLP as replacement counsel. GMG also informed Wilson that he would need to hire separate counsel to represent him.

In the ensuing months, GMG's new counsel productively conferred with Lyons and produced additional documents. In June 2019, GMG made additional document productions to cure earlier deficiencies. GMG produced documents—which were not produced in the early stages of litigation in 2017—tending to show that its partners had relied on the advice of counsel in making the decision to hire Wilson despite his non-compete obligations. Following the production of these documents, Lyons moved for sanctions, arguing that "[b]ut for wrongful withholding of evidence . . . the tortious interference count would have been resolved at summary judgment," as the "the newly-disclosed, wrongfully withheld evidence" revealed "pre-planning [of] Mr. Wilson's hiring in connection with GMG's obtaining the business of Lyons'[s] clients or prospects."[5]

---

[wa]s in breach[,]" the record was not developed as to the other elements. *Chancery Opinion* at *8.

[5] Ch. Dkt. 145 at ¶¶ 1, 4(a) (Lyons's Motion for Sanctions).

Although the Court of Chancery declined to decide on an appropriate sanction until after trial, it acknowledged the significance of the newly produced information, noting that the information should have "clearly" been produced, given its "extraordinar[y] important[ce]" to the underlying theories of the case.[6] The court also recognized that the information could have affected the court's resolution of the summary judgment motion. On June 29, 2020, the parties informed the Court of Chancery that in light of the court's ruling on Lyons's sanctions motion, Lyons would forgo supplemental depositions and proceed to trial on the outstanding issues in the case.

On December 9, 2020, one day before the parties were scheduled to go to trial, Wilson filed an affidavit "disavow[ing] and recant[ing] any prior sworn testimony inconsistent with" his new affidavit (the "Wilson Affidavit").[7] In the affidavit, in direct contravention of his prior testimony, Wilson stated that he, GMG, and OTG had participated in a series of meetings and phone calls in late 2015 and early 2016, during which they agreed that OTG would change brokers to GMG. He also stated that they collectively agreed that GMG would hire Wilson to service OTG and other clients as soon as the USI injunction was lifted. GMG moved to continue the trial, but the Court of Chancery denied the continuance the same day. Shortly thereafter,

---

[6] Ch. Dkt. 158 at 26:20, 24 (Motion for Sanctions Hrg. Tr.).
[7] *See* App. to Answering Br. at B199.

Lyons and GMG informed the court that they had reached a settlement in principle and that the trial would move forward only as to the causes of action remaining against Wilson.

### C. The Superior Court Litigation

On July 1, 2021, GMG sued Margolis for legal malpractice in the Superior Court, claiming that its attorneys "negligent[ly] deviat[ed] from the standard of care expected of lawyers licensed to practice" in Delaware.[8] Margolis answered GMG's complaint on September 17, 2021, and discovery ensued. On March 22, 2022, Margolis moved for summary judgment on all of GMG's claims.

The Superior Court granted Margolis's motion for summary judgment on April 10, 2023.[9] As to the underlying allegations of negligence, the Superior Court held that Margolis did not breach the standard of care owed by a Delaware attorney in developing the factual record or in presenting GMG's motion for summary judgment on Lyons's tortious interference claim because GMG prevailed on all the other causes of action at the summary judgment stage.[10] The court also found that the Wilson Affidavit was a superseding cause that broke the causal chain leading to the settlement of the Chancery Litigation.[11]

---

[8] *Id.* at B22 (Compl. ¶ 115).
[9] *GMG Ins. Agency v. Margolis Edelstein*, 2023 WL 2854760 (Del. Super. Apr. 10, 2023), *reargument denied*, 2023 WL 3522297 (Del. Super. May 17, 2023) [hereinafter "*Superior Court Opinion*"].
[10] *Id.* at *4.
[11] *Id.*

GMG appealed the Superior Court's summary judgment decision on June 14, 2023.

## II. STANDARD OF REVIEW

We review the Superior Court's decision on a motion for summary judgment *de novo*, applying the same standard as the trial court.[12] That is, we must determine whether, considering the facts and inferences in the light most favorable to the non-movant, any genuine issue of material fact existed for the jury to resolve.[13] "[A] defendant moving for summary judgment has the burden of producing evidence of necessary certitude demonstrating that there is no genuine issue of fact relating to the question of negligence and that the proven facts preclude the conclusion of negligence on its part."[14] Material facts in genuine dispute that "may reasonably be resolved in favor of either party" require denial of summary judgment in order to be properly resolved by a jury.[15] There is no absolute right to summary judgment.[16]

---

[12] *See Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009) (citing *Berns v. Doan*, 961 A.2d 506, 510 (Del. 2008)).

[13] *See Jones v. Crawford*, 1 A.3d 299, 301–02 (Del. 2010) (citing *Williams v. Geier*, 671 A.2d 1368, 1375 (Del. 1996)); *see also Ogden v. Gallagher*, 591 A.2d 215, 221 (Del. 1991) (citing *Benge v. Davis*, 553 A.2d 1180, 1182 (Del. 1989)).

[14] *Hazel v. Delaware Supermarkets, Inc.*, 953 A.2d 705, 709 (Del. 2008) (internal quotations and citation omitted).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[16] *See AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 443 (Del. 2005) (citing *Cross v. Hair*, 258 A.2d 277, 278 (Del. 1969)).

## III.  ANALYSIS

To prevail on a claim of legal malpractice, a plaintiff must establish the following elements:  (i) the employment of the attorney; (ii) the attorney's neglect of a professional obligation; and (iii) resulting loss.[17]  Regarding the last element, "the plaintiff must demonstrate that the underlying action would have been successful but for the attorney's negligence."[18]

We conclude that the Superior Court erred in two ways.  First, the Superior Court erred in granting summary judgment in favor of Margolis because there are disputes of material fact as to whether Margolis's representation of GMG in the Chancery Litigation breached the standard of care owed by Delaware attorneys.  Second, the court erred by failing to address GMG's contention that, but for Margolis's alleged negligence, GMG would have prevailed on all claims in the Court of Chancery litigation.  Therefore, we reverse the Superior Court's grant of summary judgment and remand for trial.

### A. There are genuine disputes of material fact as to whether GMG breached the standard of care in the Chancery Litigation.

To prove negligence, GMG is required to establish by a preponderance of the evidence that Margolis failed to meet its legal standard of care and that Margolis's

---

[17] *See Flowers v. Ramunno*, 27 A.3d 551, 2011 WL 3592966, at *2 (Del. Aug. 16, 2011) (TABLE) (citing *Weaver v. Lukoff*, 511 A.2d 1044, 1986 WL 17121, at *1 (Del. July 1, 1986) (TABLE)); *see also Lorenzetti v. Enterline*, 44 A.3d 922, 2012 WL 1383186, at *2 (Del. April 18, 2012) (TABLE) (citations omitted).

[18] *Flowers*, 2011 WL 3592966, at *2 (citation omitted).

10

misconduct proximately harmed GMG; "that is; [GMG] must prove the elements of duty, breach, causation, and harm."[19] "Trial judges generally will not grant summary judgment on negligence issues, but will submit those issues to the jury."[20]

In response to Margolis's motion for summary judgment, GMG cited record evidence supporting its allegation that Margolis was negligent in its representation of GMG in the Chancery Litigation.[21] GMG claimed that because Lyons's tortious interference claim survived summary judgment in the Court of Chancery, GMG incurred significant damages in the form of fees and costs and the $1.2 million settlement, which, but for Margolis's negligence, would not have been incurred.[22] And the Superior Court recognized GMG's contention that, if Lyons's tortious interference claim had not survived summary judgment in the Chancery Litigation, then GMG "would not have been in a position to be negatively affected by the Wilson Affidavit."[23] Yet the court did not squarely address this allegation.

Instead, sidestepping the Court of Chancery's acknowledgement of the potential effect of Margolis's discovery deficiencies on the summary judgment

---

[19] *Jones*, 1 A.3d at 302 (citations omitted).
[20] *Id.* at 303 (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 469 (1962)).
[21] *See* App. to Opening Br. at A83–85.
[22] *See id.* at A30 (Compl. ¶ 121) ("But for [Margolis's] aforementioned deviations from the applicable standard of care, GMG would not have incurred significant money damages, including: a [$1.2 million] settlement payment for Lyons, $165,150.23 incurred in attorneys' fees paid to [replacement counsel], and significant losses of revenue [in 2018][.]").
[23] *Superior Court Opinion* at *3 (quoting A89) (cleaned up).

11

proceedings, the Superior Court pointed to Margolis's success on the claims that were dismissed:

> There is no reason to conclude that [Margolis's] actions breached the standard of care in developing the factual record, or when presenting the [Court of Chancery] [m]otion for [s]ummary [j]udgment on the tortious interference issue. The Court of Chancery granted summary judgment in favor of [GMG] on the issues of aiding and abetting, unjust enrichment, and civil conspiracy. This ruling alone evidences the competence and diligent representation of [GMG] by [Margolis] prior to termination.[24]

Below, we explain why this holding was erroneous. GMG proffered record evidence supporting a finding that Margolis breached the standard of care for a Delaware attorney during the Chancery Litigation in three ways: (1) by failing to competently handle discovery and develop the record; (2) by failing to adequately brief and argue in favor of dismissing Lyons's tortious interference claim; and (3) by simultaneously representing GMG and Wilson despite a potential conflict of interest. We will address each category in turn.

> 1. *There is a genuine dispute of material fact as to whether Margolis breached the standard of care by failing to produce certain documents or adequately develop the record in the Chancery Litigation.*

GMG argues that Margolis committed malpractice by mishandling the discovery process, including by failing to develop the requisite factual record that

---

[24] *Id.* at *4.

12

would have allowed GMG to prevail at summary judgment on Lyons's tortious interference claim in the Chancery Litigation. GMG alleges that Margolis breached its duty of care by failing to produce critical documents in the early stages of the Chancery Litigation in 2017 (which were later produced by replacement counsel in 2019), arguing that if Margolis had conducted discovery in the manner required, those documents would have been produced and the tortious interference claim would have been resolved in GMG's favor on summary judgment.[25]

When GMG's replacement counsel produced the documents—including evidence suggesting that GMG had relied on advice of counsel in determining whether to hire Wilson in light of his non-compete agreement with Lyons[26]—Lyons filed a sanctions motion against GMG below for withholding evidence. The Court of Chancery, which informed counsel that it would fashion a sanction against GMG after trial, discussed the importance of the information that GMG failed to produce:

> I don't think this would have affected the [preliminary injunction motion]. It may have affected the summary

---

[25] *See* App. to Opening Br. at A29–30 (Compl. ¶ 118); *see also* Ch. Dkt. 145 at ¶ 1 (Lyons's Motion for Sanctions).

[26] In its motion for sanctions, Lyons noted that in June 2019, "GMG produced (among other unrelated documents) introductory emails between GMG principal Charles Thomas and a Pennsylvania attorney, Douglas Maloney of Begley, Carlin & Mandio, LLP, dated October 27-28, 2015" and that "[i]n the emails, Mr. Thomas transmits copies of Mr. Wilson's Employment Agreement with Lyons and his prior USI contract, and explains: 'If we (GMG Insurance Agency) move forward and hire Mr. Wilson we would like your feedback to any restrictions that may be placed on us (or Mr. Wilson) from either of the above Agreements. And, Mr. Wilson is considering what his position will be in regard to defending himself if he joins GMG and the litigation is still open; his employer verbally said they would cover this defense cost and have done so to date, but are they obligated to provide it if he resigns?'" Ch. Dkt. 145 at ¶ 10 (Lyons's Motion for Sanctions) (citations omitted).

judgment motion. But let me turn to the substance of the motion here, which is that *this information should have been produced. It clearly should have been.* I mean, this is not an insignificant issue in this litigation. You know, you can quibble about whether it's central or goes to the heart of the case, but *it is certainly an extraordinarily important thing if what is being litigated is whether an employee has breached his employment contract and whether his current employer tortiously interfered with the contract.* It's extraordinarily important to know what the relationship was between that new employer and the former employee. Certainly, a lot of things are possible, including that this was inadvertent, but at any rate, *it should have been produced.*[27]

This supports an inference that Margolis's actions did not meet the requisite standard of care owed by a Delaware attorney. And Margolis's internal communications suggest that the delayed production was attributable solely to its own failures and not to GMG.[28] GMG further alleges that during the course of the discovery process, independent of the document production, Margolis's attorneys failed to ask GMG's principals "if they consulted with an attorney prior to GMG's hiring of Wilson, and

---

[27] Ch. Dkt. 158 at 26:16–27:9 (Motion for Sanctions Hrg. Tr.) (emphasis added).

[28] *See, e.g.*, App. to Answering Br. at B50 (Compl., Ex. 2) (April 6, 2017 Email between Margolis Attorneys) ("[Lyons's counsel] are probably correct that we are using an obsolete tool to do this discovery. In truth, we are ill-equipped to engage in this sort of litigation. I have been smoke and mirroring it in our D&O cases to date."); *id.* at B53 (Compl., Ex. 3) (April 26, 2017 Email between Margolis Attorneys) ("Over the last few weeks, it has become clear to me that I am wholly inexperienced with how to handle litigation in [the Court of Chancery]. I was unaware of Delaware's comprehensive e-discovery requirements and initially treated discovery as I would in a [Pennsylvania or New Jersey] case[.] . . . [I]t has become clear to me that it is expected of those litigating in Delaware to produce documents and information in a manner that I am not familiar with. As a result of this late discovery, and as you know, we are severely behind the [eight]-ball in discovery. Opposing counsel is threatening to seek an adverse inference if we do not complete document production this week, which is next to impossible. . . . I believe this case is winnable for us, but I am concerned that we will be at a deficit if we cannot remedy these discovery issues.").

specifically any discussions about whether the hiring would violate" the non-compete agreement.[29]

The record permits other inferences, including that Margolis's representation satisfied the standard of care. For its part, Margolis asserts that it "fulfilled its discovery obligations to produce all responsive and non-privileged documents provided by GMG[]" and that, in any case, "any deficiency" did not "proximately cause[] any harm as alleged by GMG."[30] Margolis also vigorously contests that it did not speak with GMG's principals about whether they consulted counsel regarding Wilson's hiring.[31] But these disputed facts and the inferences to be drawn from them are not ones that can be resolved as a matter of law under Superior Court Civil Rule 56.

> *2. There is a genuine dispute of material fact as to whether Margolis breached the standard of care owed by a Delaware attorney by failing to adequately brief the tortious interference claim in GMG's motion for summary judgment in the Chancery Litigation.*

GMG also alleges that Margolis's failures in GMG's summary judgment briefing in the Chancery Litigation constituted legal malpractice. It alleges that

---

[29] *Id.* at B10 (Compl. ¶ 48).

[30] *Id.* at B232 (Answer ¶ 118(d)).

[31] *See, e.g.*, *id.* at B210 (Answer ¶ 48) ("Margolis attorney Miller asked GMG's principals about attorney review, and asked what due diligence GMG did prior to hiring Wilson. In addition, on March 1, 2017, [Margolis counsel] requested, *inter alia*, 'Any documents or communications addressing the Lyons non-compete and what internal controls were in place (if any) to ensure it was abided by;' [which] would necessarily include any communications with counsel concerning the Lyons non-compete prior to hiring Wilson; yet GMG responded 'No documentation.'").

Margolis did not meet the standard of care in two ways: (1) by failing to discuss the factual record and the legal elements of the tortious interference claim in any meaningful way; and (2) by failing to develop and raise an advice-of-counsel defense as to the tortious interference claim.

As GMG points out, the summary judgment briefing Margolis authored on Lyons's tortious interference claim in the Chancery Litigation is cursory at best. The analysis as to tortious interference is conclusory or non-existent.[32] The briefing likewise does not describe the relevant facts related to Lyons's tortious interference claim. Nor does it raise an advice-of-counsel defense, which GMG contends would have been "critical" in defeating the tortious interference claim, "as it could be used to help demonstrate that GMG did not have an improper motive in hiring Wilson, since all other available evidence demonstrated that GMG always was intent on making sure that Wilson complied with the terms of the Lyons [non-compete] [a]greement."[33]

Margolis claims that such record development would not be as consequential as GMG suggests. First, Margolis disputes that GMG's receipt of legal advice was critical, "particularly where the advice itself was never revealed."[34] It also disputes

---

[32] *See* Ch. Dkt. 123 at 37 (stating in one conclusory sentence why Lyons's claim for tortious interference fails); *see also* Ch. Dkt. 125 at 35 (same); Ch. Dkt. 128 (not addressing the tortious interference claim).

[33] App. to Answering Br. at B11 (Compl. ¶ 57).

[34] *Id.* at B214 (Answer ¶ 57).

16

that testimony from the attorney who consulted with GMG's principals would have been "highly probative" or helpful in any way to GMG.[35]  But these disputed facts and inferences about whether Margolis satisfied the standard of care owed by Delaware attorneys were not ones that the Superior Court could resolve at the summary judgment stage.

> 3. *There is a genuine dispute of material fact as to whether Margolis breached the standard of care owed by a Delaware attorney by simultaneously representing GMG and Wilson.*

GMG also contends that Margolis committed malpractice by simultaneously representing GMG and Wilson in the Chancery Litigation despite a potential conflict of interest.  According to GMG, Margolis:

> Fail[ed] to advise GMG that it was inappropriate and unwise for Margolis to represent both GMG and Wilson in the [Chancery Litigation] and to obtain their written informed consent before doing so if GMG chose to agree to joint representation, as required by Rule 1.7(b)(4) of the Delaware Lawyers' Rules of Professional Conduct.[36]

GMG claims that "[u]pon viewing Lyons' allegations" in the Chancery Litigation, "it should have been readily apparent to [Margolis] that there was a significant possibility that Wilson was in breach of the [non-compete] [a]greement," which GMG argues was a circumstance "directly contrary to its interests."[37]  Additionally,

---

[35] *Id.* at B213 (Answer ¶ 56).
[36] *See id.* at B23 (Compl. ¶ 118(a)); *see also id.* at B9 (Compl. ¶ 48).
[37] *Id.* at B7 (Compl. ¶ 37).

17

the dual representation allegedly "forestalled [Margolis] from rendering effective legal advice to GMG[,]" "such as[] . . . whether it was advantageous for GMG to terminate Wilson once the lawsuit had been filed, or at any time subsequent during the pendency of the litigation."[38]

Margolis disputes that its representation of both GMG and Wilson was problematic. It argues that at the time, "their interests appeared to be completely aligned."[39] Margolis also argues that GMG "fails to explain how it was harmed by Margolis's joint representation of GMG with its employee Wilson, whom it wanted to keep in its employ[]."[40] This factual disagreement likewise cannot be resolved at the summary judgment stage.

In sum, when the evidence is viewed in the light most favorable to GMG, a reasonable juror could conclude that Margolis breached the standard of care owed by a Delaware attorney while representing GMG in the Chancery Litigation. Because the factual record and the reasonable inferences to be drawn from it could support a finding in GMG's favor on its allegations of negligence, the Superior Court erred in granting summary judgment in favor of Margolis.

---

[38] *Id.* at B8 (Compl. ¶ 38).
[39] *Id.* at B232 (Answer ¶ 118(a)).
[40] Answering Br. at 42.

18

**B. The Superior Court's failure to address GMG's claim that Margolis's negligence allowed Lyons's tortious interference claim to survive GMG's summary judgment motion in the Chancery Litigation was reversible error.**

The Superior Court also erred by failing to address GMG's contention that, but for Margolis's negligence, none of Lyons's claims would have survived GMG's summary judgment motion in the Chancery Litigation. If that claim has merit, then it seems that GMG would have a viable claim for damages given that it incurred considerable fees and costs and paid to settle the case after the Court of Chancery denied its motion as to its tortious interference claim, thus keeping the Chancery Litigation alive.[41] Instead of squarely addressing GMG's claim, the Superior Court found that the Wilson Affidavit was a superseding cause that broke the chain of causation between Margolis's alleged negligence and the damages that GMG allegedly incurred:

> [T]he undisputed evidence demonstrates that settlement would not have occurred at the time it did, or in the agreed amount, but for the Wilson Affidavit. The evidence [i]n the record does not show that [Margolis] could reasonably foresee—twenty months before the execution of the Wilson Affidavit—that Wilson would perjure himself by changing his prior sworn testimony with the Wilson Affidavit.[42]

---

[41] *See Chancery Opinion* at *8.
[42] *Superior Court Opinion* at *4.

If, however, GMG had prevailed entirely at the summary judgment stage in the Court of Chancery, the litigation would have ended there, and the Wilson Affidavit, if it would have ever seen the light of day, would have been academic. As a practical matter, there would no longer have been a "cause" for the Wilson Affidavit to supersede.[43]

## IV.  CONCLUSION

For the foregoing reasons, the Superior Court erred in granting Margolis Edelstein's motion for summary judgment. We therefore REVERSE the judgment of the Superior Court. We REMAND this case to the Superior Court for further proceedings consistent with this Opinion. Jurisdiction is not retained.

---

[43] Without factual determinations as to Margolis's negligence and the harm, if any, caused by it, it would be premature to review the Superior Court's superseding cause analysis. Other than to observe—as the Superior Court noted—that whether a cause is superseding is typically a factual question, we reserve comment on this issue.